### Swann-Day Lumber Company v. Cornett, et al.

(Decided November 18, 1914.)

### Appeal from Harlan Circuit Court.

1. Contracts—Jurisdiction—Action Against Corporation—Civil Code, Section 72.—Under Section 72 of the Civil Code, an action may be brought on a contract against a corporation in the county in which the contract is made or to be performed.

2. Contracts—Where Made—Acceptance.—A contract is executed at the place where the acceptance is made.

3. Contracts—Where Made—Acceptance.—A contract was signed by defendant in Powell County and mailed to plaintiffs in Harlan County, where it was signed by plaintiffs and returned by mail to defendant. Held, that the contract was completed in Harlan County.

4. Contracts—Alteration—Immaterial.—Where defendant executed a contract and mailed it to plaintiffs, who, before signing, changed the figure "3" in 3,000 to "2," held, that this did not invalidate the contract or qualify the acceptance of the offer, where the words "three thousand" were written out, and the word "three" was

not changed, but was clear and legible, and where the parties proceeded to carry out the contract as if no change in its terms had been made or attempted.

5.  Contracts—Logging Contract—Failure to Brand Logs—Evidence. —Where plaintiffs sought to recover, under a logging contract, the value of certain logs alleged by plaintiff to have been lost because they were not branded, and it not appearing in the contract that it was defendant's duty to brand the logs, held under the evidence that plaintiffs were not entitled to recover.

6.  Contracts—Logging Contract—Shrinkage- Evidence—Finding of Jury.—Where plaintiffs sought to recover under a logging contract, for shrinkage of certain logs, and the evidence was conflicting, held that a finding in favor of plaintiffs on this item was not excessive or flagrantly against the evidence.

7.  Appeal—Separate Findings by Jury.—Where a jury makes two separate findings in plaintiffs' favor, one under an erroneous instruction and one under a proper instruction, the judgment may be reversed for the erroneous item and affirmed as to the other.

METCALF & JEFFIRES for appellant.

ZEB. A. STEWART, F. F. ACREE and GEORGE R. POPE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming in part and reversing in part.

In this action for damages for breach of a logging contract, plaintiffs, A. B. and D. B. Cornett, recovered of defendant, Swann-Day Lumber Company, a verdict and judgment for $400. Defendant appeals.

The contract out of which the action grows is dated October 18, 1909. By its terms plaintiffs sold the defendant from three to five thousand poplar, ash and cu cumber saw logs. The logs were to be cut into lengths of 10, 12, 14 and 16 feet. The logs were to be graded in first and second class logs. First class logs were to be 18 inches and up in diameter. Second class logs were to be from 14 inches to 17 inches, inclusive, in diameter. The price to be paid for first class logs was $14 a thousand feet, and for second class logs $10 a thousand feet. All the logs mentioned in the contract were to be painted by plaintiffs on both ends with white paint. The contract further provided that the logs were to be branded with a private log brand of plaintiffs. The first measurement under the contract was to take place in the month of November, 1909, and the last measurement during the month of March, 1910. The logs were to be placed on good floating streams of water or on good splash dams.

They were to be delivered by plaintiffs in Main Grassy Creek below the mouth of Lewis Creek, a point in Leslie County.

Defendant is a corporation, with its principal place of business in Clay City in Powell County. Floyd Day is its president. Plaintiffs reside in Harlan County. Prior to the execution of the contract D. B. Cornett called on defendant's president in Clay City. The terms of the contract were discussed by them, and the contract in question drawn up by Floyd Day. The contract was then mailed to A. B. Cornett in Harlan County. The contract was in duplicate. A. B. Cornett signed the contract for himself and son and mailed a copy to defendant. The number of logs sold by plaintiffs is stated in the contract as follows: "From three thousand to five thousand (3,000 to 5,000) poplar, ash and cucumber saw logs." At the time of signing the contract, A. B. Cornett changed the figure "3" in 3,000 to "2."

According to the evidence for plaintiffs, defendant failed during the month of March, or at any time thereafter, to measure and brand 586 logs, which lay out from March until the following January, and by reason of this fact the loss by way of cracking, shrinkage and sap rot was about 25 per cent. In addition to this item, there were 53 logs which were lost because they were not branded. These logs averaged about 200 feet to the log, and at the average price were worth about $127.20. The evidence for the defendant is that the loss by way of shrinkage on the 586 logs did not exceed 10 or 15 per cent of their value. About 2,000 logs were accepted and paid for under the contract, and these averaged about $2.05 to the log. Averaging the 586 logs on the same basis, their value was about $1,201.30. The shrinkage, therefore, on these logs, was about $120.13, or at most not over $180.19. Averaging the 53 logs lost on the basis of $2.05 each, the average price of those delivered, the loss did not exceed $108.65.

The first ground urged for reversal is that the Harlan Circuit Court was without jurisdiction. The suit was brought in Harlan County, and the process served on defendant's president in Powell County. Defendant raised the question of jurisdiction both by special demurrer and by answer in the nature of a plea in abatement. Under our Code, an action upon a contract against a corporation having an office or place of business in this State or chief officer or agent residing in this State, may

be brought in the county in which such office or place of business is situated, or in which such officer or agent resides, or in the county in which the contract was made or to be performed. Civil Code, Section 72. The question is: Where was the contract made? The question is not affected by the preliminary negotiation or conversation leading up to the execution of the written contract. The contract sued on was reduced to writing. The place where that contract was made controls. The contract was prepared by defendant's president and executed by defendant in Powell County. It was then mailed to plaintiffs in Harlan County. Plaintiffs signed the contract there and mailed it there to defendant. Ordinarily a contract is executed at the place where the acceptance is made. 9 Cyc., 670. The written contract in this case, after being signed by defendant and mailed to plaintiffs, constituted a written offer. When plaintiffs signed the contract and placed it in the post office in Harlan County, addressed to the defendant, there was an unqualified acceptance of the offer and the contract was completed in Harlan County. Shaw v. Ingram-Day Lumber Co., 152 Ky., 329. The effect is the same as if defendant had carried the written contract to Harlan County and there executed it in conjunction with plaintiffs. Milliken v. Pratt, 125 Mass., 374; 28 Am. Rep., 241. The mere fact that plaintiffs changed the figure "3" in 3,000 to "2" did not invalidate the contract or qualify the acceptance of the offer, Woolfork v. Bank of America, 10 Bush, 504, the change being immaterial in view of the fact that the word "three" in three thousand was clear and legible, and was not changed, and of the further fact that the parties thereafter proceeded to carry out the contract as if no change in its terms had been made or attempted. The contract having been made in Harlan County it follows that the Harlan Circuit Court had jurisdiction.

2. The next question concerns the propriety of the recovery of damages for the 53 logs that were lost. These logs were washed away by high water, and plaintiffs and their witnesses say they were lost because they were not branded. The original contract is before us. We do not find any provision in it requiring defendant to brand the logs. On the contrary, the contract provides:

"It is further understood and agreed that the party of the first part shall place on each of all the logs furnished under this contract its private log brand, made thus: C with a hammer brand."

Plaintiffs were designated as the party of the first part. The contract does not specify when the branding is to be done. Plaintiffs could have branded the logs before they were measured and taken up by the defendant. That being true, it cannot be said that the failure of the defendant to measure and take up the logs can be properly regarded as the proximate cause of their being carried away and lost. It was the duty of plaintiffs to use ordinary care to brand and protect their own logs. That being true, they cannot recover on the theory that if defendant had measured the logs they would have branded them and thereby prevented the loss. We therefore conclude that as a matter of law the contract and facts adduced in evidence do not warrant a recovery for the 53 logs that were lost.

3. As to the shrinkage on the 586 logs that were never measured and taken up by the defendant, the evidence is conflicting. While the contract does provide for a ten per cent. reduction on acount of shrinkage in case plaintiffs failed to comply with the contract, the contract is silent in regard to the reduction by shrinkage in the case of a failure by defendant to comply with the contract. That being true, the amount of the damages on account of shrinkage was a question of fact to be determined by the jury from the evidence. On this question the evidence is conflicting, and we cannot say that the finding of the jury is either excessive or flagrantly against the evidence.

4. The questions of damages were submitted by two instructions, instruction No. 1, having reference to damages for the 53 logs that were lost, and instruction No. 2 to damages by way of shrinkage in the 586 logs. The jury made a separate finding on each of these items, allowing damages amounting to $123.60 under instruction No. 1, and damages amounting to $276.40 under instruction No. 2. It follows, therefore, that the erroneous item of damage amounting to $123.60 may be separated from the other item, which was properly allowed. That being true, the judgment may be reversed for the erroneous item, and affirmed as to the other.

So much of the judgment as awards a recovery of $276.40 for depreciation in the value of the 586 logs is affirmed. That part adjudging a recovery for $123.60 on account of the 53 logs that were lost is reversed for a new trial consistent with this opinion.