[No. B109755. Second Dist., Div. Two. Feb. 5, 1998.]

KEN BERG et al., Plaintiffs and Appellants, v.
MTC ELECTRONICS TECHNOLOGIES CO., LTD., et al., Defendants
and Respondents.

## COUNSEL

Nagler & Associates, Lawrence H. Nagler, Robert M. Zabb and David F. Berry for Plaintiffs and Appellants.

Bradley E. Brook, Irell & Manella, Alexander F. Wiles, Jessica M. Weisel, Quinn, Emanuel, Urquhart & Oliver, William Urquhart, Shapiro, Rosenfeld & Close, Edward M. Rosenfeld, Proskauer, Rose, Goetz & Mendelsohn, Lori Sambol, Alain H. Fairley and Stephen C. Krane for Defendants and Respondents.

## OPINION

**ZEBROWSKI, J.**—This shareholder action raises questions of forum non conveniens. Two issues predominate. The first concerns the effect on forum non conveniens analysis of a clause by which a party submits to jurisdiction in California. The second concerns the circumstances in which a case filed in California by a California resident can properly be stayed pending litigation elsewhere.

The trial court stayed the instant action in favor of litigation of several similar suits pending in the United States District Court for the Eastern District of New York in Brooklyn (EDNY). The instant action as well as the previous suits pending in the EDNY all arise out of transactions involving the stock of MTC Electronic Technologies Co., Ltd. (MTC), and the activities of MTC in the telecommunications business in China. MTC, numerous MTC directors and officers, and MTC's underwriters and auditors are defendants in the litigation pending in the EDNY.

MTC is a British Columbia corporation. The clause by which MTC submitted to jurisdiction in California is contained in a prospectus for an MTC stock issue. The clause states simply that MTC has submitted to jurisdiction in Los Angeles. The clause does not expressly mandate Los Angeles as the exclusive forum in which any claims against MTC must be resolved, as "mandatory" forum selection clauses do. Instead, the clause in issue here is worded simply to submit a foreign corporation (MTC) to jurisdiction in Los Angeles.

Broadly worded service of suit clauses, by which a party submits to jurisdiction in any competent court, have been found not to be mandatory forum selection clauses. The clause in issue here is more narrowly worded; it submits MTC only to the jurisdiction of courts in Los Angeles, rather than

to the jurisdiction of any competent court. The cases nevertheless interpret clauses of this type to confer personal jurisdiction on the selected forum, but not to mandate resolution of the dispute in that forum regardless of other considerations. The rigorous restrictions on avoidance of mandatory forum selection clauses therefore do not apply to this case. Instead, although the clause in issue is an important consideration, it is only one among many factors which must be evaluated in a proper forum non conveniens analysis.

The second issue, regarding when a case filed in California by a California resident may be stayed, implicates considerations of comity and judicial economy as opposed to California's strong interest in protecting the interests of California plaintiffs. Considerations of comity and judicial economy can sometimes justify a stay even if California plaintiffs are involved.

Under the circumstances of this case, the trial judge acted within the scope of her permissible discretion when she stayed the instant action. The order staying the instant action pending litigation of the related actions in the EDNY will therefore be affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The focus of the instant action is MTC's representations concerning its involvement in the emerging telecommunications industry in the People's Republic of China. MTC's involvement in China also forms the subject matter of numerous other lawsuits, all of them pending in the EDNY. The allegations advanced in these numerous MTC lawsuits are detailed and complex, but a skeletal outline is sufficient to illustrate the forum non conveniens issues.

### a. *The "MTC I" and "MTC II" lawsuits.*

In 1993, MTC shareholders filed three class actions in the EDNY. Named as defendants were MTC, numerous directors and officers of MTC, MTC's underwriters (plus an affiliated company which allegedly assisted in marketing MTC stock), and MTC's auditors. These actions were consolidated (MTC I) and eventually assigned to Judge Gleeson and Chief Magistrate Chrein (the EDNY judges). In 1994, another class action was filed in the EDNY against substantially the same defendants (MTC II). MTC II was assigned to the same EDNY judges.

Both MTC I and MTC II revolve around allegations of false statements concerning MTC's activities in selling fax machines, cellular telephones and

pagers in China. MTC I was brought on behalf of all persons who purchased MTC stock during a class period ending February 22, 1993. MTC II was brought on behalf of all persons who purchased MTC stock during a class period beginning February 25, 1993. MTC II thus takes up chronologically close to where MTC I leaves off.

Both MTC I and MTC II allege fraudulent activities in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j, 78t), Securities and Exchange Commission rule 10b-5, and the Racketeer Influenced and Corrupt Organizations Act (RICO). In 1994, an additional action was filed in the EDNY, pleading claims identical to MTC I, apparently for the sole purpose of adding another class representative to the MTC I litigation. This latter case was also assigned to the same EDNY judges. For purposes of forum non conveniens analysis, we consider this latter case to be part of MTC I.

b. *The Kayne case.*

In 1995, another MTC case was filed in the United States District Court for the Central District of California in Los Angeles (Kayne). The plaintiffs in Kayne are MTC shareholders. The defendants are MTC and numerous directors and officers of MTC. The Kayne case alleges, similarly to MTC I and MTC II, fraud in connection with MTC's cellular phone, pager and fax activities in China, as well as claims of improprieties in connection with an ensuing hostile takeover battle. The Kayne complaint pleads violations of sections 10(b) and 20 of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j, 78t) and Securities and Exchange Commission rule 10b-5, plus pendent state claims of fraud, negligent misrepresentation, breach of fiduciary duty and violations of the California Corporations Code, as well as other claims. The time period during which the Kayne plaintiffs allegedly bought MTC stock coincides in large part with the combined class periods alleged in MTC I and MTC II.

c. *The Ruling of the MDL Panel.*

After the Kayne case was filed, MTC plus ten director and officer defendants filed a motion with the federal Judicial Panel on Multidistrict Litigation (the MDL panel) seeking transfer of the Kayne case to the EDNY for coordination with MTC I and MTC II. The MDL panel granted the motion, finding that the Kayne case and MTC I and MTC II "involve common questions of fact, and that centralization . . . in the Eastern District of New York will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. While some

differences may exist among the actions in terms of parties, claims, and time periods involved, all actions are rooted in allegations that defendants engaged in multiple misrepresentations and omissions regarding MTC's telecommunications business in China. Centralization . . . is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." The Kayne case was transferred to the EDNY and assigned to the same EDNY judges. (The MTC I case, MTC II case and the Kayne case are sometimes hereafter referred to collectively as the EDNY cases.)

### d. *This action.*

In 1996, the instant action was filed in the superior court in Los Angeles. Plaintiffs again are shareholders of MTC. The defendants are MTC, several subsidiary or affiliated corporations, numerous MTC directors and officers, MTC's underwriter and auditor, a company that assisted in the marketing of MTC stock, and MTC's California securities counsel. The instant action again seeks recovery for losses allegedly sustained in purchasing MTC stock on the basis of misrepresentations about MTC's telecommunications business in China.

### e. *The motion to stay and this appeal.*

Numerous defendants filed a joint motion to stay the instant action pending litigation of the EDNY cases. The defendants argued traditional forum non conveniens, and additionally argued that a court also has "inherent authority," apart from its forum non conveniens authority, to stay an action when a federal action is pending covering the same or similar subject matter. The plaintiffs opposed, emphasizing the interest of California in protecting California plaintiffs and the clause in MTC's prospectus.

The trial court granted the motion, and this appeal followed.[1] Since we will conclude that the trial court ruled properly in staying this action on traditional forum non conveniens grounds, we need not reach the question of whether a court has "inherent authority" to stay an action even if forum non conveniens considerations do not warrant a stay.

### II. DISCUSSION.

### a. *The actions of the MDL panel and the EDNY.*

Much of plaintiffs' briefing is devoted to attacking the transfer order of the MDL panel and the rulings of the EDNY judges. Plaintiffs first complain

[1]Pursuant to Code of Civil Procedure 904.1, subdivision (a)(3), an order staying an action "on the ground of inconvenient forum" is appealable.

that the MDL panel's transfer order reflects insufficient respect for the desire of a California plaintiff to litigate in California (citing Judge Kozinski's dissenting opinion in *In re American Continental Corp.* (9th Cir. 1996) 102 F.3d 1524, 1546 [traditional deference to plaintiff's choice of forum disappears in MDL context].) They also contend that discovery and other rulings by the EDNY judges have been arbitrary, unfair, and in general have deprived plaintiffs of a fair adjudicatory procedure.

Neither this court nor the trial court has any direct power over either the MDL panel or the EDNY. Nevertheless, both this court and the trial court do have a duty to ensure fair treatment to California plaintiffs. (See, e.g., *Stangvik* v. *Shiley Inc.* (1991) 54 Cal.3d 744 [1 Cal.Rptr.2d 556, 819 P.2d 14]; *Thomson* v. *Continental Ins. Co.* (1967) 66 Cal.2d 738 [59 Cal.Rptr. 101, 427 P.2d 765].) ■ The interest of California in ensuring fair treatment of California plaintiffs is the reason why the law generally allows only for a stay, and except in rare circumstances precludes dismissal, of an action filed by California residents. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1997) ¶ 3:426 et seq., p. 3-103 et seq.) The instant action was stayed, not dismissed. The trial court retains jurisdiction. If an action is stayed in favor of litigation in an alternative federal forum, and the federal forum commences to deprive a California plaintiff of a fair adjudicatory process, a California court has the power to lift the stay and proceed with litigation. Such a course should of course not be taken lightly, because it would create an unseemly conflict between federal and state courts, and cause the potential for conflicting rulings. Instead, such action would have to be confined to extreme cases. Yet it remains an available option if necessary to prevent injustice to a California plaintiff.

The plaintiffs complain here about the general inconvenience of litigating in Brooklyn, about allegedly inconvenient scheduling of discovery amounting to "prejudice" and "ongoing unfairness," and about allegedly dismissive remarks by the magistrate judge in the EDNY. Assuming that any of these complaints are sufficient to support relief of some kind, plaintiffs could seek that relief in the federal appellate courts. Apparently they have not done so. If a sufficient basis for lifting the stay should arise, the facts constituting that basis should first be presented to the trial court. In ruling on this appeal, we therefore disregard plaintiffs' effective request that we base our decision upon an appellate-style review of the rulings of the MDL panel and the EDNY, or upon events that have allegedly occurred since the trial court

granted the motion to stay. Instead, we focus on the validity of the trial court's ruling granting the stay.[2]

b. *The clause regarding jurisdiction in Los Angeles.*

The clause in MTC's prospectus relied upon by plaintiffs reads as follows: "The company [MTC] has expressly submitted to the jurisdiction of the State of California and United States Federal courts sitting in the City of Los Angeles, California, for the purpose of any suit, action or proceedings arising out of this Offering." Plaintiffs characterize this clause as a mandatory forum selection clause, and contend that it is binding not only on MTC, but also on the various other defendants who also moved to stay this action pending the EDNY litigation.[3] Plaintiffs cite three cases discussing the rather stringent restrictions on avoidance of mandatory forum selection clauses. (*Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490 [14 Cal.Rptr.2d 906]; *CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347 [46 Cal.Rptr.2d 412]; and *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666 [16 Cal.Rptr.2d 417] (*Cal-State*).) ▮ A preliminary question, however, is whether the clause in issue here can accurately be characterized as a mandatory forum selection clause.

The clause involved here is clearly different from the clauses in the three cases cited by plaintiffs. The clause in *Lu* provided that " '[a]ny and all litigation that may arise as a result of this Agreement shall be litigated in Dade County, Florida.' " (*Lu v. Dryclean-U.S.A. of California, Inc., supra,* 11 Cal.App.4th 1490, 1492.) The clause in *CQL* provided that " 'any claims . . . shall . . . be prosecuted in the appropriate court of Ontario[4].' " (*CQL Original Products, Inc. v. National Hockey League Players' Assn., supra,* 39

---

[2]We similarly disregard plaintiffs' argument that it was *MTC* that "forum shopped" and chose the EDNY forum. MTC is a *defendant* in the EDNY cases. Normally a defendant cannot affect the choice of forum except by obtaining court rulings. Plaintiffs' argument that MTC chose the forum makes sense only if construed as an accusation of illicit collusion between MTC and the plaintiffs who filed the EDNY cases. However, there are no citations to the record to support such a contention, and supervision of the integrity of the EDNY cases rests with the EDNY in any event. The basis for the "forum-shopping" allegation is unexplained, and we therefore accord it no weight.

[3]Since we will affirm the court's imposition of the stay, we need not consider the applicability of this clause to the director and officer defendants, the underwriter and auditor defendants, the securities counsel defendants, etc.

[4]The clause also stated that " 'The Licensee hereby attorns to the jurisdiction . . . of the courts of . . . Ontario . . . .' " (*CQL Original Products, Inc. v. National Hockey League Players' Assn., supra,* 39 Cal.App.4th 1347, 1352.) The clause therefore distinguished between a submission to jurisdiction and a designation of a mandatory forum by stating the two concepts separately, even though a designation of a mandatory forum would seem necessarily to include a submission to the jurisdiction of that forum.

Cal.App.4th 1347, 1352.) The clause in *Cal-State* provided that " '[A]ny appropriate state or federal district court located in the Borough of Manhattan, New York City, New York shall have exclusive jurisdiction over any case of controversy arising under or in connection with this Agreement . . . .' " (*Cal-State, supra,* 12 Cal.App.4th 1666, 1672, fn. 4.) The clause in question in the instant action does not contain express language of exclusivity of jurisdiction or a mandatory place of litigation. Instead, the clause simply states that MTC submits to jurisdiction in Los Angeles.[5]

The proper characterization of such a clause can significantly impact the outcome of a forum non conveniens motion because the effect of a mandatory forum selection clause is different from the effect of a clause by which a party simply submits to jurisdiction. Although not even a "mandatory" forum selection clause can completely eliminate a court's discretion to make appropriate rulings regarding choice of forum, the modern trend is to enforce mandatory forum selection clauses unless they are unfair or unreasonable. (*Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 495 [131 Cal.Rptr. 374, 551 P.2d 1206]; *Cal-State, supra,* 12 Cal.App.4th 1666, 1678; *Bremen* v. *Zapata Off-Shore Co.* (1972) 407 U.S. 1 [92 S.Ct. 1907, 32 L.Ed.2d 513].) In California, the procedure for enforcing a forum selection clause is a motion to stay or dismiss for forum non conveniens pursuant to Code of Civil Procedure sections 410.30 and 418.10 (*Cal-State, supra,* 12 Cal.App.4th 1666, 1680), but a motion based on a forum selection clause is a special type of forum non conveniens motion. The factors that apply generally to a forum non conveniens motion do not control in a case involving a mandatory forum selection clause. (See, e.g., *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105 [90 Cal.Rptr. 461] [collecting generally applicable factors]; *Cal-State, supra,* 12 Cal.App.4th 1666, 1683 [declining to apply "*Great Northern* factors" in light of forum selection clause].)

 If there is no mandatory forum selection clause, a forum non conveniens motion "requires the weighing of a gamut of factors of public and private convenience . . . ." (*Cal-State, supra,* 12 Cal.App.4th 1666, 1683.) However if there *is* a mandatory forum selection clause, the test is simply whether application of the clause is unfair or unreasonable, and the clause is usually given effect. Claims that the previously chosen forum is unfair or inconvenient are generally rejected. (See, e.g., *Appalachian Ins. Co.* v. *Superior Court* (1984) 162 Cal.App.3d 427 [208 Cal.Rptr. 627].) A court

[5]The clause does add that the submission to jurisdiction is "for the purpose of any suit, action or proceeding arising out of this Offering." However, since a "suit, action or proceeding" arising out of the stock offering is the only reasonably possible purpose for MTC's submission to jurisdiction in its prospectus, this language adds little scope to the clause.

will usually honor a mandatory forum selection clause without extensive analysis of factors relating to convenience. (See *Furda* v. *Superior Court* (1984) 161 Cal.App.3d 418 [207 Cal.Rptr. 646].) " 'Mere inconvenience or additional expense is not the test of unreasonableness . . .' " of a mandatory forum selection clause. (*Smith, Valentino & Smith, Inc.* v. *Superior Court, supra,* 17 Cal.3d 491, 496.) ██ If, by contrast, a clause merely provides for submission to jurisdiction, and does not expressly mandate litigation exclusively in a particular forum, the normal forum non conveniens analysis applies. (See *Ford Motor Co.* v. *Insurance Co. of North America* (1995) 35 Cal.App.4th 604 [41 Cal.Rptr.2d 342].) Although a clause of the kind involved here is always entitled to substantial weight, it is only one factor in the forum non conveniens mix. (See generally, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* ¶ 3:444 et seq., p. 3-105 et seq.)

Many clauses call for a party to submit to the jurisdiction of "any court of competent jurisdiction." (See, e.g., *Appalachian Ins. Co.* v. *Superior Court, supra,* 162 Cal.App.3d 427.) This "Lloyd's-type" clause does not preclude the application of generally applicable forum non conveniens principles. To the contrary, it can be an abuse of discretion for a court to deny a forum non conveniens motion in a case with such a clause. (See, e.g., *Appalachian Ins. Co., supra,* 162 Cal.App.3d 427.) The clause at issue in the instant case varies from the broad "Lloyd's-type" clause involved in *Appalachian Insurance Co.* only in that is more narrowly focused. Rather than providing that MTC submits to *any* court of competent jurisdiction, it provides that MTC submits only to the jurisdiction of a court in Los Angeles. However, the clause does not expressly provide that any dispute must be resolved exclusively in Los Angeles regardless of what other factors might exist. Clauses that grant jurisdiction to a particular forum without expressly making that forum the mandatory situs for resolution of disputes are considered permissive only. (See, e.g., *Hunt Wesson Foods, Inc.* v. *Supreme Oil Co.* (9th Cir. 1987) 817 F.2d 75; *Utah Pizza Service, Inc.* v. *Heigel* (D. Utah 1992) 784 F.Supp. 835.)

*Hunt* involved a contract with a clause which stated: " 'The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract.' " (*Hunt Wesson Foods, Inc.* v. *Supreme Oil Co., supra,* 817 F.2d 75, 76.) Plaintiff filed suit in Orange County, but defendant removed to federal district court. The federal district court remanded, ruling that the clause mandated litigation in Orange County. Defendant appealed. The Ninth Circuit reversed, stating, "Here, the plain meaning of the language is that the Orange County courts shall have jurisdiction over this action. The language says nothing about the Orange County courts having exclusive

jurisdiction. The effect of the language is merely that the parties consent to the jurisdiction of the Orange County courts. Although the word 'shall' is a mandatory term, here it mandates nothing more than that the Orange County courts have jurisdiction. Thus, [defendant] cannot object to litigation in the Orange County Superior Court on the ground that the court lacks personal jurisdiction. Such consent to jurisdiction, however, does not mean that the same subject matter cannot be litigated in any other court. In other words, the forum selection clause in this case is permissive rather than mandatory. [¶] In comparison, in cases in which forum selection clauses have been held to require litigation in a particular court, the language of the clauses clearly required *exclusive* jurisdiction." (*Hunt Wesson Foods, Inc.* v. *Supreme Oil Co.*, *supra*, 817 F.2d 75, 77.)

In *Utah Pizza Service, Inc.* v. *Heigel*, *supra*, 784 F.Supp. 835, 837, the contract contained a clause stating: " 'The parties agree that in the event of litigation between them, Franchise Owner stipulates that the courts of the State of Michigan shall have personal jurisdiction over its person, that it shall submit to such personal jurisdiction, and that venue is proper in Michigan.' " The court rejected the claim that this clause mandated litigation in Michigan only, stating, "Numerous courts have held that forum selection clauses which give a court jurisdiction without clearly making that jurisdiction exclusive are permissive rather than mandatory. The mere granting of jurisdiction is insufficient to make a clause mandatory. Additional language giving exclusive jurisdiction to the forum is required. Clauses which merely grant jurisdiction to a designated forum do not prohibit litigation in other appropriate fora. [Citations.] [¶] . . . [¶] A mandatory clause contains clear language showing that jurisdiction is appropriate in the designated forum and none other. See *Hunt Wesson Foods, Inc.* v. *Supreme Oil Co.*, 817 F.2d at 77-78; *Kachal, Inc.* v. *Menzie*, 738 F.Supp. at 373-74. ('Mandatory forum selection clauses contain language such as "exclusive" or "only". The language mandates that the designated courts are the only ones which have jurisdiction.')" (*Utah Pizza Service, Inc.* v. *Heigel*, *supra*, 784 F.Supp. 835, 838; see also *Docksider, Ltd.* v. *Sea Technology, Ltd.* (9th Cir. 1989) 875 F.2d 762, 764 ["When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive."].)

The clause at issue here does not specify Los Angeles as the exclusive forum, but instead provides only for personal jurisdiction in Los Angeles. According to the authorities cited, the clause is therefore not a mandatory forum selection clause, but rather a "permissive" one only. On this authority, the trial court was correct in applying the general principles of forum non conveniens, rather than the rules that apply to enforcement of mandatory forum selection clauses.

c. *The contract interpretation argument.*

■ Plaintiffs contend that clauses such as that involved here must be construed according to the principles of contract interpretation, citing cases involving clauses contained in a contract rather than in a prospectus. (See, e.g., *Hunt Wesson Foods, Inc.* v. *Supreme Oil Co.*, *supra*, 817 F.2d 75, 77.) Plaintiffs then note the nationwide availability of service of process authorized in securities cases by the Securities Exchange Act, and cases holding that this nationwide service of process extends to foreign defendants (such as MTC). (*Securities Investor Protection Corp.* v. *Vigman* (9th Cir. 1985) 764 F.2d 1309.) Building on this analysis, plaintiffs then cite the rule of contract construction which provides that a construction which renders portions of a contract surplusage should be avoided. (*Appalachian Ins. Co.* v. *McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 12 [262 Cal.Rptr. 716].) Plaintiffs then conclude that the clause regarding jurisdiction must be construed as a mandatory forum selection clause, since to construe it otherwise would add nothing to what is already provided for by federal securities law, and would render the clause mere surplusage.

Assuming that contract principles apply,[6] these principles do not compel a finding that the clause involved here is a mandatory forum selection clause. A prospectus, whatever its contractual attributes, is also an informational document. The statement in the prospectus that MTC submits to the jurisdiction of a Los Angeles court provides information to a potential investor that MTC, even though it is a British Columbia corporation, is subject to jurisdiction in Los Angeles. The clause therefore communicates information, regardless of what knowledge of federal securities law a potential investor might otherwise possess. Since the statement serves an informational purpose even if not construed as a mandatory forum selection clause, plaintiffs' contractual interpretation arguments do not compel a finding that the clause is a mandatory forum selection clause notwithstanding the authorities cited above.[7]

Additionally, the normal application of the principle of contract interpretation that calls for avoiding constructions which create surplusage calls for avoiding a construction of one clause in a contract so as to render another clause in the same contract surplus. (See, e.g., *Appalachian Ins. Co.* v. *McDonnell Douglas Corp.*, *supra*, 214 Cal.App.3d 1, 12 ["court must view

---

[6]The point is not contested in the briefs.

[7]As to the effect of representations in a prospectus under federal securities law, that is of course a matter for the federal courts. Here, the federal courts, through the MDL panel, transferred the Kayne case to the EDNY. The other MTC cases are also being entertained by the federal court in the EDNY. The federal courts which bear responsibility for enforcement of federal securities law apparently do not view the clause as do plaintiffs.

the language in light of the instrument as a whole" and "court should give effect to every provision"].) Thus Civil Code section 1641 provides that "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Here, plaintiffs argue a somewhat different theory. They contend that a clause cannot be construed as literally written if the clause merely restates existing law. No authority has been cited for this precise proposition.

### d. *The trial court's application of forum non conveniens principles.*

■ Aside from the issues discussed above, plaintiffs' primary complaint about the trial court's stay order focuses on the status of most of the plaintiffs as California residents. Plaintiffs rely heavily on *Klein* v. *Superior Court* (1988) 198 Cal.App.3d 894, 901 [244 Cal.Rptr. 226], which states: "A fundamental principle of choice of forum deeply rooted in California precedent is not to disturb the California plaintiff's choice of forum except for weighty reasons. (E.g., *Corrigan* v. *Bjork Shiley Corp.* (1986) 182 Cal.App.3d 166, 173 [227 Cal.Rptr. 247].) No California appellate court to date has decided in a published opinion that a California litigant should be prevented from proceeding in California, the forum of its choosing." This latter statement was not completely accurate when made. In *Dendy* v. *MGM Grand Hotels, Inc.* (1982) 137 Cal.App.3d 457 [187 Cal.Rptr. 95], the trial court stayed a lawsuit filed in California by San Diego residents arising out of the MGM Grand Hotel fire in Las Vegas. The Court of Appeal affirmed, allowing the litigation to proceed instead in Nevada. (See also *Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 860 [126 Cal.Rptr. 811, 544 P.2d 947] ["the trial court retains a flexible power to . . . stay actions by true California residents when it finds that the foreign forum is preferable"]; *Hansen* v. *Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753 [59 Cal.Rptr.2d 229] [California court has the power to stay an action for forum non conveniens even if the sole plaintiff is a California resident]; *Century Indemnity Co.* v. *Bank of America* (1997) 58 Cal.App.4th 408 [68 Cal.Rptr.2d 132] [action by California resident insurer stayed pending litigation in Hawaii]; cf. *Celotex Corp.* v. *American Ins. Co.* (1987) 199 Cal.App.3d 678 [245 Cal.Rptr. 429] [action for declaratory relief of insurance coverage by corporation doing business in California stayed in favor of similar actions pending in Ohio].)[8]

It is nevertheless true that a stay of an action filed by a California resident is rare. The instant case, however, is one in which a stay was justified. By

---

[8]In *Caiafa Prof. Law Corp.* v. *State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800 [19 Cal.Rptr.2d 138], the court affirmed an order staying a state court action brought by a California resident pending litigation of a related federal case. The *Caiafa* court did not expressly use the language of forum non conveniens in its opinion, perhaps because of the way the matter was briefed. However, because *Caiafa* did not speak in terms of forum non conveniens, *Caiafa* forms the primary basis for defendants' claim that a court has "inherent

the time of the motion to stay in 1996, shortly after the instant action was filed, the various actions pending against MTC and others in the EDNY had been pending for three to four years. For most of that period, all had been assigned to the same two EDNY judges. These two judges had handled extensive motion practice in the EDNY cases, and had gained significant knowledge of the issues. Although the instant action is not precisely identical to any of the other actions, each action complains of fraud in connection with the sale of MTC stock. Each complains of misrepresentations regarding MTC's telecommunications business in China, although some include other claims regarding other dealings in MTC stock as well. At the time of the stay motion, precisely what claims would be resolved by the EDNY cases could not be quickly or easily determined. It is likely, however, that the EDNY cases will determine at least some of the key issues among the parties. (Cf. 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, §§ 354 et seq. [collateral estoppel], 408 et seq. [collateral estoppel asserted by strangers to litigation], pp. 915 et seq., 983 et seq.) The plaintiffs in the instant action had filed a motion to add themselves as plaintiffs in the Kayne case in the EDNY.

By the time of the stay motion, 200,000 pages of documents had been produced from MTC's files in British Columbia and Hong Kong. Ninety-two days of deposition had been taken, and one thousand deposition exhibits had been marked. Witnesses had come from various locales, many from British Columbia and Asia. While some witnesses and evidence are located in Los Angeles, Los Angeles is by no means the "center of gravity" of this dispute. Many operative events appear to have occurred in China or British Columbia, or anywhere MTC's prospectus was disseminated. Most of the defendants were subject to jurisdiction in the EDNY.

The plaintiffs' opposition to the motion to stay was based primarily on the jurisdiction clause discussed above, the ruling of the MDL panel, the pretrial rulings made by the EDNY judges, and the California residence of many of the plaintiffs. Even though these factors are entitled to consideration, the trial judge in these circumstances could reasonably find them outweighed by the burdens and inefficiencies that would be imposed by the conduct of parallel litigations in different fora, especially in light of the far-flung evidence and operative events. The trial court therefore did not err in issuing a stay pending developments in the EDNY cases on grounds of forum non conveniens.

---

authority" to stay regardless of how the forum non conveniens considerations balance. *Caiafa*, however, expressly cited earlier forum non conveniens cases as authority, and expressly relied upon traditional forum non conveniens considerations such as the convenience and availability of witnesses, the convenience of the parties, etc., in addition to concerns with comity and judicial economy. We regard *Caiafa* as an instance of forum non conveniens analysis.

III. DISPOSITION.

The order appealed from (order staying the instant case pending litigation of the EDNY cases) is affirmed. Each party to bear its own costs on appeal.

Boren, P. J., and Fukuto, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 29, 1998.